1
2
3
4
5
6
7
8                        **UNITED STATES DISTRICT COURT**

9                       **CENTRAL DISTRICT OF CALIFORNIA**

10

11  MARTHA PAGANO,                    )   NO. CV 09-06557 SS
                                      )
12                   Plaintiff,       )
                                      )
13           v.                       )   **MEMORANDUM DECISION AND ORDER**
                                      )
14  MICHAEL J. ASTRUE,                )
    Commissioner of the Social        )
15  Security Administration,          )
                                      )
16                   Defendant.       )
    _____   )
17

18                              **I.**

19                         **INTRODUCTION**

20

21      Martha Pagano ("Plaintiff") brings this action seeking to overturn

22  the decision of the Commissioner of the Social Security Administration

23  (hereinafter the "Commissioner" or the "Agency") denying her application

24  for Disability Insurance Benefits ("DIB").  The parties consented,

25  pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

26  United States Magistrate Judge.  For the reasons stated below, the

27  decision of the Agency is REVERSED and REMANDED for further proceedings.

28

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for DIB on January 28, 2004. (Administrative Record ("AR") 84-86). She alleged a disability onset date of June 12, 2003, (AR 109), due to "back surgery low back pain." (AR 61). The Agency denied this claim on March 19, 2004. (AR 61-64).

Plaintiff filed a second application for DIB on April 26, 2005. (AR 94-96). She alleged a disability onset date of June 12, 2003, (AR 109), due to severe low back pain, neck and shoulder pain, S/P L4-5 posterior lumbar discectomy, S/P L4-5 fusion, and back pain and discomfort. (AR 65). The Agency denied this claim initially on June 24, 2005. (AR 65-69). Plaintiff requested reconsideration of this claim on August 14, 2005, with the assistance of an attorney. (AR 73). The Agency denied reconsideration on January 9, 2006. (AR 74-78). Plaintiff requested a hearing, (AR 79), which was held before Administrative Law Judge ("ALJ") Helen E. Hesse on March 27, 2007. (AR 722-60). Plaintiff appeared with counsel and testified. (Id.).

On June 19, 2007, the ALJ issued a decision denying benefits. (AR 26-38). Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied her request on July 15, 2009. (AR 5-7). Thus, the ALJ's decision became the final decision of the Agency. Plaintiff commenced the instant action on September 9, 2009.

\\

2

# III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

3

404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing h[er] past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional

---

[2]    Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a).

4

limitations, the Grids are inapplicable and the ALJ must take the
testimony of a vocational expert.  <u>Moore v. Apfel</u>, 216 F.3d 864, 869
(9th Cir. 2000).

**IV.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and
concluded that Plaintiff was not disabled under the Social Security Act.
(AR 29-38).  At the first step, the ALJ found that Plaintiff had not
engaged in substantial gainful activity since June 12, 2003.  (AR 31).
At step two, she found that Plaintiff had the following severe
impairments: disorders of the cervical and lumbar spine, status post
lumbar laminectomy, arthritis of both hands, and fibromyalgia.  (<u>Id.</u>).

At the third step, the ALJ found that the severe impairments at
step two did not meet or medically equal a listed impairment.  (AR 31).
At step four, the ALJ found that Plaintiff was unable to perform any
past relevant work.  (AR 37).  Additionally, the ALJ found that
Plaintiff had the following RFC:

> to sit 8 hours in an 8 hour day, stand and walk 6 hours in an
> 8 hour day, changing positions briefly each hour.  She can
> lift and carry 10 pounds occasionally, less than 10 pounds
> frequently.  She can occasionally climb stairs, but cannot
> climb ladders or scaffolding.  She can occasionally bend,
> balance, stoop, kneel, crouch and crawl.  She should avoid

1       power gripping with the bilateral upper extremities.  She is

2       limited to occasional at or above shoulder work with the

3       bilateral upper extremities.  She should avoid unprotected

4       heights, dangerous or fast moving machinery.

5

6   (AR 31).

7

8       At step five, the ALJ found that Plaintiff had acquired skills from

9   past relevant work that were transferable to other occupations with jobs

10  existing in significant numbers in the national economy, including

11  "nurse case manager" and "utility review coordinator." (AR 37-38).  The

12  ALJ relied on the testimony of vocational expert ("VE") Alan Ey to make

13  this determination.  (AR 38).  Because the ALJ found that Plaintiff

14  could perform other occupations with jobs existing in significant

15  numbers in the national economy, she concluded that Plaintiff was not

16  disabled and not entitled to benefits.  (Id.).

17

18                                    **V.**

19                **STANDARD OF REVIEW**

20

21      Under 42 U.S.C. § 405(g), a district court may review the

22  Commissioner's decision to deny benefits.  The court may set aside the

23  Commissioner's decision when the ALJ's findings are based on legal error

24  or are not supported by substantial evidence in the record as a whole.

25  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v.

26  Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

27

28

                                          6

1     "Substantial evidence is more than a scintilla, but less than a

2 preponderance." <u>Reddick</u>, 157 F.3d at 720.  It is "relevant evidence

3 which a reasonable person might accept as adequate to support a

4 conclusion." <u>Id.</u>  To determine whether substantial evidence supports

5 a finding, the court must "'consider the record as a whole, weighing

6 both evidence that supports and evidence that detracts from the

7 [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny</u>

8 <u>v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can

9 reasonably support either affirming or reversing that conclusion, the

10 court may not substitute its judgment for that of the Commissioner.

11 <u>Reddick</u>, 157 F.3d at 720-21.

12

13                **VI.**

14           **DISCUSSION**

15

16     Plaintiff contends the ALJ erred for several reasons: (1) "the ALJ

17 fail[ed] to adduce complete evidence about the ability to perform other

18 work." (Memorandum in Support of Plaintiff's Complaint ("Plaintiff's

19 Memo.") at 5-9); (2) the ALJ did not provide specific and legitimate

20 reasons for rejecting the opinions of Plaintiff's treating physicians,

21 Brian Andrews, M.D., Anh Dinh, M.D., and Staniford Helm, M.D., (<u>id.</u> at

22 9-16); and (3) the ALJ did not provide clear and convincing reasons for

23 rejecting Plaintiff's subjective complaints.  (<u>Id.</u> at 16-20).

24

25     The Court agrees with Plaintiff's second and third claims.  As the

26 case must be remanded on grounds two and three, it is unnecessary for

27 the Court to resolve ground one.  For the reasons discussed below, the

28

1  Court finds that the ALJ's decision should be reversed and this action
2  remanded for further proceedings.

4  **A.   The ALJ Failed To Provide Specific And Legitimate Reasons For**
5      **Rejecting The Treating Physicians' Opinions**

7      Plaintiff claims that the ALJ improperly rejected the treating
8  physicians' opinions: namely, Dr. Andrews, Dr. Dinh, and Dr. Helm.
9  (Plaintiff's Memo. at 9-16).  Plaintiff alleges that the ALJ's rejection
10 of these opinions was improper because objective medical findings in the
11 record support the physicians' opinions.  (Id. at 11-16).  Plaintiff
12 argues that the ALJ failed to provide specific and legitimate reasons
13 for rejecting the treating physicians' opinions.  (Id. at 9-16).  The
14 Court agrees.

16     Where the treating doctor's opinion is not contradicted by another
17 doctor, it may be rejected only for "clear and convincing" reasons.
18 Lester v. Chater, 81 F.3d 821, 830 (9th Cir., as amended April 9, 1996).
19 Even if the treating physician's opinion is contradicted by another
20 doctor, the ALJ may not reject this opinion without providing specific,
21 legitimate reasons, supported by substantial evidence in the record.
22 Id.  The opinions of treating physicians are entitled to special weight
23 because the treating physician is hired to cure and has a better
24 opportunity to know and observe the claimant as an individual.
25 Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

26
27
28

Here, Plaintiff's treating physicians diagnosed her with fibromyalgia. (AR 374-75, 381, 655). The presence of fibromyalgia, in certain circumstances, may support a finding of disability. Because of the complexities in diagnosing this disease, the Ninth Circuit has recognized that objective symptoms "do not establish the presence or absence of fibromyalgia." Jordan v. Northrop Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004), overruled on other grounds by Abatie v. Alta Health & Life Insurance, 458 F.3d 955, 970 (9th Cir. 2006) (en banc). As stated in Jordan: "[F]ibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." Id. Instead, a fibromyalgia diagnosis can only be confirmed by a specific test where a patient reports pain in five parts of the body and when at least eleven of eighteen points cause pain when palpated by an examiner's thumb. Id. (citing Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001)).

**1.    The ALJ Failed To Articulate Specific And Legitimate Reasons For Rejecting Dr. Andrews' Opinion**

Dr. Andrews treated Plaintiff for "progressive arthritic pain" on August 21, 2006, (AR 374-75), and January 18, 2007. (AR 655). On August 21, 2006, Dr. Andrews diagnosed Plaintiff with chronic pain syndrome, particularly in the lower back, severe fibromyalgia with tender points in multiple sites, and found "evidence of significant hyperextensible joint disease." (AR 374-75). Dr. Andrews wrote that

1    Plaintiff "clearly ha[d] marked low back pain related to the previous
2    spondylolisthesis and ha[d] not been significantly improved with the
3    surgery 3 years ago." (AR 374). Dr. Andrews also found that Plaintiff
4    "ha[d] markedly reduced range of motion of the neck in all planes,"
5    "absent left ankle reflex," "walked with a cane and a limp," and had
6    "obvious persistent pain." (Id.).

7

8         The ALJ rejected Dr. Andrews' opinion that Plaintiff had severe
9    fibromyalgia with multiple tender points. The ALJ reasoned "that Dr.
10   Andrews [did] not actually document these tender points or . . . any
11   other specific findings indicative of fibromyalgia. He use[d] a general
12   diagnosis to cover [Plaintiff's] alleged chronic pain." (AR 35).

13

14        However, the record of Dr. Andrew's examination contradicts the
15   ALJ's finding. For example, Dr. Andrews noted that he found "evidence
16   of significant hyperextensible joint disease" and "on examination,
17   [Plaintiff] ha[d] bony swelling of DIP and PIP joints, but also some
18   tenderness over the second and third MTPs." (AR 375). Further, Dr.
19   Andrews observed Plaintiff as being in "obvious persistent pain,"
20   wearing a TENS unit, using a cane to ambulate, and walking with a limp.
21   (Id.). Dr. Andrews also ordered x-rays and other tests. (Id.).
22   Moreover, the ALJ failed to notice that Dr. Helm documented the tender
23   points. (AR 378). Thus, objective medical findings in the record
24   contradict the ALJ's reason for rejecting Dr. Andrews' opinion.
25   \\
26   \\
27   \\
28

10

## 2.   The ALJ Failed To Articulate Specific And Legitimate Reasons For Rejecting Dr. Dinh's Opinion

Dr. Dinh treated Plaintiff for severe back pain from 1997 to 2007. (AR 275, 655).  On July 31, 2006, September 13, 2005, and August 1, 2005, Dr. Dinh diagnosed Plaintiff with persistent sciatica, unstable low lumbar, chronic pain, and fibromyalgia with an onset date of January 2002.  (AR 275, 369-72, 655).  Dr. Dinh wrote that Plaintiff had persistent pain following a laminectomy. (AR 371).  Prolonged physical therapy had not resolved the pain.  (Id.).  Dr. Dinh also noted that Plaintiff had leg weakness and was unable to sit or stand for long without pain.  (AR 369, 371).  Dr. Dinh reported that Plaintiff "[wa]s severely restricted because of her back condition." (AR 372).  Dr. Dinh found that Plaintiff could not stand or sit for more than a half hour at a time, nor pull, push, or lift more than five pounds.  (AR 369).  Dr. Dinh concluded that Plaintiff could not sustain any type of work activity for eight hours, five days a week, or fifty weeks a year. (Id.).

The ALJ rejected Dr. Dinh's questionnaire form in favor of "the much more detailed and thorough examination from Dr. Francini from the same time period."  (AR 35).  The ALJ also found that Dr. Dinh provided no evidence of actual physical examination.  (Id.).  Finally, the ALJ found that Dr. Dinh's assessments were unsupported by objective findings and based on chronic subjective pain alone.  (Id.)

11

1    The ALJ favored Dr. Francini's report over Dr. Dinh's report
2  because the ALJ found that Dr. Francini's report was more "detailed and
3  thorough." (AR 35). However, there is independent medical evidence in
4  the record that supports Dr. Dinh's conclusions. See supra Part VI.A.1.
5  and infra Part VI.A.3. (discussing the objective findings of Dr. Andrews
6  and Dr. Helm, respectively).

7

8    The ALJ asserted that "Dr. Dinh refer[ed] to chronic subjective
9  pain alone as the basis for his assessment." (AR 35). This is
10 incorrect, however, because Dr. Dinh did rely upon objective findings.
11 For example, he reported that Plaintiff's left thigh was smaller than
12 her right thigh. (AR 275). Dr. Dinh opined that this indicated
13 atrophy. (Id.). Dr. Dinh also reported decreased sensation in
14 Plaintiff's left leg. (Id.). Further, Dr. Dinh found that Plaintiff
15 had decreased reflex in her left ankle and walked with a limp. (AR
16 369). Thus, the record shows that Dr. Dinh in fact relied on objective
17 findings.

18

19    Finally, the ALJ asserted that Dr. Dinh did "not provide any
20 evidence of actual physical examination." (AR 35). However, Dr. Dinh
21 reported that "patient was seen by me." (AR 369). Dr. Dinh further
22 reported that he had been seeing Plaintiff from September 10, 1997 to
23 August 3, 2005, as of September 13, 2005. (AR 275).

24
25
26
27
28

                                    12

**3.**   **The ALJ Failed To Articulate Specific And Legitimate Reasons For Rejecting Dr. Helm's Opinion**

Dr. Helm treated Plaintiff for "post laminectomy lumbar and fibromyalgia" intermittently from November 2005 to March 2007. (AR 578). On December 4, 2006, Dr. Helm diagnosed Plaintiff with post laminectomy syndrome, visible muscular atrophy, and "post lami lumbar, myalgia and myositis, inc. fibromyalgia." (AR 381). Dr. Helm reported that Plaintiff has L4-5 persistent pain, pain in her low and cervical back, and pain in her neck, shoulders, and legs. (Id.). Further, Dr. Helm documented the pain points. (AR 378). Dr. Helm also reported that a BBHI[3] produced a global pain rating of 9. (AR 378). Dr. Helm wrote that Plaintiff possessed considerable functional limitations and used a cane to ambulate. (AR 380-381). Finally, Dr. Helm concluded that Plaintiff had marked difficulty in maintaining social functioning, and deficiencies in concentration, persistence, or pace. (AR 582).

To the extent the ALJ rejected Dr. Helm's opinion, she failed to address the substance of his findings:

> In a letter dated March 20, 2007, Dr. Helm reported that
> [Plaintiff] ha[d] been on various medication regimens for her
> condition, [used a] TENS unit and heating pads, and continued
> to suffer from severe pain, memory impairment[,] and sleep
> problems. He opined that she was permanently disabled and

---

[3]  The Brief Battery Health Improvement ("BBHI") test is scaled to 10, 10 being the highest level of pain.

1  would not be able to maintain gainful employment.  The

2  undersigned gives little weight to such conclusions, however,

3  as the determination of disability is reserved to the ALJ.

4

5  (AR 36) (internal citations omitted).  In her analysis, the ALJ merely

6  restated the law without providing any specific and legitimate reasons

7  for rejecting Dr. Helm's opinion.

8

9  In sum, the case must be remanded to remedy the defects described

10  above in the ALJ's decision.  Specifically, the ALJ's reasons were not

11  legitimate because: (1) Dr. Andrews and Dr. Dinh both provided objective

12  medical findings to support their diagnoses; (2) the record demonstrates

13  that Dr. Dinh actually examined Plaintiff; and (3) the ALJ discounted

14  the weight given to Dr. Helm's findings without providing any specific

15  and legitimate reasons.  Upon remand, the ALJ must provide specific and

16  legitimate reasons for rejecting the opinions of Plaintiff's treating

17  physicians.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.); Kail

18  v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

19

20  **B.    The ALJ Failed To Provide Clear And Convincing Reasons For**

21       **Rejecting Plaintiff's Subjective Complaints**

22

23  Plaintiff claims that the ALJ failed to articulate clear and

24  convincing reasons for rejecting her subjective complaints testimony.

25  (Plaintiff's Memo. at 16-20).  The Court agrees.

26

27

28

To determine whether a plaintiff's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks omitted).  The plaintiff, however, "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (internal quotation marks omitted).

Second, if the plaintiff meets this first test, and there is no evidence of malingering, "the ALJ can reject the [plaintiff's] testimony about the severity of her symptoms only by offering specific, clear[,] and convincing reasons for doing so." Smolen, 80 F.3d at 1281. Moreover, the ALJ may not discredit a plaintiff's testimony of pain and deny disability benefits solely because the degree of pain alleged by the plaintiff is not supported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).

In her Disability Report Appeal form dated July 22, 2005, Plaintiff wrote that she had "severe, debilitating" pain in her low back, legs, shoulders, and neck that spread to her hips, legs, fingers, hands, and joints. (AR 135).  In her Pain Questionnaire dated September 13, 2005, Plaintiff reported that she wore a TENS unit and took a variety of prescription medications to control her pain. (AR 145).  Plaintiff also

15

reported that her pain medications sometimes caused her upset stomach and mental cloudiness, and were sometimes ineffective. (AR 145). In addition, Plaintiff wrote that she laid in bed and on the floor to relieve her pain, which was sometimes ineffective. (AR 145). Finally, Plaintiff reported to Dr. Francini that her pain level varied between 8/10 and 10/10 daily. (AR 258).

At the hearing, Plaintiff testified that she had fibromyalgia with low back pain, migraine headaches, and constant pain. (AR 730). Plaintiff further testified that she sometimes stayed in bed all day because of the pain. (AR 738-9). Plaintiff stated that she used Imitrex, Lyrica, and a TENS unit to control her pain. (AR 731-32). In addition, Plaintiff stated that she soaked in the tub two to three times a day, used hot and cold compresses, and took naps to control her pain. (AR 738-39, 743-45). Regarding her limitations, Plaintiff testified that she walked up to two blocks at varying frequencies each week and used a cane to ambulate. (AR 733). Plaintiff also testified that she could not lift "anything over maybe five pounds, four pounds." (AR 740). For example, a quart of juice could fall out of her hand from pain or a cramp. (Id.). Moreover, Plaintiff stated that her husband or son paid the household bills lately because she "confused them a couple times and didn't pay it on time or [she] actually paid the wrong [bill]." (AR 742-43)

The ALJ applied the two-step analysis to Plaintiff's subjective symptoms testimony. At the first step, the ALJ "note[d] that . . . [Plaintiff had] impairments which could be expected to produce some

16

pain." (AR 36).  At the second step, the ALJ did not find any evidence of malingering.  (AR 749).  Because Plaintiff satisfied the first test and no malingering was present, the ALJ was required to offer "clear and convincing" reasons before rejecting Plaintiff's subjective symptoms testimony.  <u>Smolen</u>, 80 F.3d at 1281.

The ALJ rejected Plaintiff's testimony for the following stated reasons: (1) Plaintiff was "not described as a surgical candidate, nor is there any evidence she has required extended periods of hospital confinement or emergency room treatment"; (2) Plaintiff exhibited "no consistent abnormalities of gait," nor did she provide evidence that "assistive devices are actually required"; (3) Plaintiff provided "no evidence of diffuse atrophy or muscle wasting"; (4) Plaintiff could apparently "drive without apparent difficulty"; (5) Plaintiff "sat through the more-than-an-hour hearing without any apparent difficulty" and answered questions "alertly and appropriately"; (6) Plaintiff provided no evidence that her "pain medications . . . significantly impaired [her] ability to do basic work activities" or caused her significant side effects. (AR 36).  The ALJ's stated reasons, however, do not provide clear and convincing reasons for rejecting Plaintiff's testimony.

The ALJ's first reason for rejecting Plaintiff's testimony was that Plaintiff "[wa]s not described as a surgical candidate."  (AR 36). However, the ALJ overlooked the fact that Plaintiff already had back surgery.  (AR 160-66).  Specifically, Plaintiff had a laminectomy performed by Dr. Robert S. Bray, M.D., on June 12, 2003, at Cedars-Sinai

1  Medical Center.  (AR 163-66).  Additionally, surgery is not an
2  appropriate treatment for fibromyalgia.  See Jordan, 370 F.3d at 872.
3  ("There is no cure [for fibromyalgia].").  Further, Dr. Dinh stated that
4  Plaintiff had persistent pain following her laminectomy.  (AR 371).
5  Lack of surgery, therefore, is not a convincing reason to reject
6  Plaintiff's testimony.

7

8      The ALJ's second reason was that Plaintiff exhibited "no consistent
9  abnormalities of gait, nor [provided] any evidence that any assistive
10  devices [were] actually required."  (AR 36).  However, this reason is
11  contradicted by Plaintiff's use of a cane.  Plaintiff testified that she
12  needed a cane to ambulate.  (AR 740).  In addition, Plaintiff's
13  physicians stated that Plaintiff uses a cane to ambulate.  Dr. Francini
14  observed Plaintiff using a four-point walker.  (AR 257).  Dr. Dinh
15  stated that Plaintiff "had falls before [without] assistance devi[c]e."
16  (AR 276).  Dr. Andrews stated that Plaintiff "walked with a cane and a
17  limp."  (AR 374).  Dr. Helm stated that Plaintiff "[could] occasionally
18  walk without a cane, with . . . medication."  (AR 381).  Reports of
19  Plaintiff using a cane to ambulate, therefore, contradict this reason.

20

21      The ALJ's third reason was that Plaintiff provided "no evidence of
22  diffuse atrophy or muscle wasting, common indicators of chronic pain."
23  (AR 36).  However, the ALJ overlooked the fact that atrophy and muscle
24  wasting are not typically associated with fibromyalgia.  Jordan, 370
25  F.3d at 872.  ("[O]f greatest importance to disability law,
26  [fibromyalgia's] symptoms are entirely subjective.  There are no
27  laboratory tests for the presence or severity of fibromyalgia.").  In

28

1   addition, Dr. Dinh's report, (AR 275), and Dr. Helm's report, (AR 381),

2   indicate that atrophy was present.   Moreover, other evidence in the

3   record supported a diagnosis of fibromyalgia.   For example, Dr. Helm

4   documented Plaintiff's tender points.   (AR 378).   Also, Dr. Nafoosi

5   observed tenderness.   (AR 750).   Further, Plaintiff complained of

6   persistent pain.   (AR 135).   Other facts, therefore, support Plaintiff's

7   claim of chronic pain.

8

9       The ALJ's fourth reason was that Plaintiff "[wa]s able to drive

10  without apparent difficulty."   (AR 36).   However, at the hearing, the

11  ALJ   asked   the   Plaintiff   simply   whether   she   drives,   without

12  qualification.   (AR 728).   Thus, the ALJ did not establish that

13  Plaintiff drives without difficulty.   Further, Plaintiff's testimony

14  contradicts the ALJ's finding.   For example, Plaintiff indicated in her

15  questionnaire that she cannot drive on a "bad day" but "on good days,

16  go short distances."   (AR 144).   In addition, Dr. Andrews noted that

17  Plaintiff has osteoarthritis in her hand, which would limit one's

18  ability to operate a steering wheel, and therefore contradicts the ALJ's

19  finding.   (AR 374).   Thus, the evidence is, at best, unclear as to

20  whether Plaintiff drives with difficulty.

21

22      The ALJ's fifth reason was that she observed Plaintiff "[sit]

23  through the more-than-an-hour hearing without any apparent difficulty."

24  (AR 36).   However, while an ALJ may use ordinary observation techniques

25  as part of her evaluation, in light of the other problems with the ALJ's

26  findings, this reason alone does not justify rejecting Plaintiff's

27  testimony.   The ALJ may not use "sit and squirm" jurisprudence alone to

28

1   reject credibility.   Periminter v. Heckler, 765 F.2d 870, 872 (9th Cir.

2   1985).

3

4        The ALJ's sixth reason was that "there was no evidence in the

5   medical record of [Plaintiff experiencing] any significant side effects"

6   from her pain medication.   (AR 36).   However, Plaintiff exhibited

7   confusion during the hearing when she was asked about the intensity of

8   her pain.   (AR 741-72).   Additionally, Plaintiff testified that she no

9   longer paid the household bills because of confusion. (AR 742).   These

10  facts contradict the ALJ's reasoning.

11

12       In sum, the ALJ's reasons for rejecting Plaintiff's subjective

13  complaints were not clear and convincing.   Remand for further

14  proceedings is appropriate because additional proceedings can remedy

15  defects in the Commissioner's decision.  Harman, 211 F.3d at 1179; Kail,

16  722 F.2d at 1497.

17  \\

18  \\

19  \\

20  \\

21  \\

22  \\

23  \\

24  \\

25  \\

26  \\

27  \\

28

**VII.**

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 15, 2010

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

_____

[4]  This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

21